AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Oklahoma

*FILED*
Mark C. McCarthy, Clerk
U.S. DISTRICT COURT
MAY 13 2019

In the Matter of the Search of

1334 N. Joplin Avenue, Tulsa, OK, and curtilage premises,
6242 E. Marshall Place, Tulsa, OK, and curtilage premises,
8001 S. Mingo Rd., Apt. 1502, Tulsa, OK, and curtilage premises,
5710 S. Rockford Ave., Tulsa, OK and curtilage premises,
1817 W. 45th Street, Tulsa, OK, and curtilage premises,
530 W. Denny, Catoosa, OK, and curtilage premises,
5238 E. 15th St., Unit #168, Tulsa, OK,
2017 S. 129th E. Ave., Suite B, Tulsa, OK

Case No. 19-mj-102-FHM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachments "A", "B", "C", "D", "E", "F", "G" and "H"

located in the _____ Northern _____ District of _____ Oklahoma _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "I"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 and 841(a) Drug Conspiracy | |

The application is based on these facts:

See Attached Affidavit by Taylor Wilson, SA/DEA

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Taylor Wilson, SA/DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5-13-19

_____
*Judge's signature*

City and state: Tulsa, OK

US Magistrate Judge Frank H. McCarthy
*Printed name and title*

## AFFIDAVIT FOR SEARCH WARRANT

Taylor Wilson, being duly sworn under oath, states as follows:

1.      I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice. I have been a DEA Special Agent since October 2015. I am currently assigned to the Tulsa Resident Office (TRO), in Tulsa, Oklahoma, and I am an "investigative or law enforcement officer" of the United States as defined in 21 U.S.C. § 878(a). I was previously employed with Customs and Border Protection (CBP), Department of Homeland Security. I worked as a CBP Officer for approximately two years. During my law enforcement career, I have received over 1,500 hours in specialized training from various federal law enforcement agencies. This training has focused upon methods of unlawful manufacturing of illegal narcotics via clandestine laboratories, the installation and monitoring of global positioning satellite (GPS) trackers, Title III wire interceptions, smuggling and distribution techniques, methods of drug trafficking, as well as the means by which drug traffickers derive, launder and conceal their profits from drug trafficking, the use of assets to facilitate unlawful drug trafficking activity and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. I have gained a considerable amount of knowledge about drug trafficking organizations and their members through my training and experience. During the course of my training and interviews with various defendants I have learned how individuals involved in drug

distribution schemes maintain records and conspire to deceive law enforcement as well as rival distributors of controlled dangerous substances. I have learned how individuals who are involved in the distribution of controlled dangerous substances maintain records and secret monies derived from the sale of illegal drugs.

2.     Based on my experience as a Special Agent with the Drug Enforcement Administration (DEA), I also know that those involved in international drug trafficking rely heavily on telephones to communicate with one another in order to coordinate the smuggling, transportation, and distribution of illegal drugs, and that they frequently employ coded language and slang terminology in an effort to maintain secrecy while engaging in such communications.

3.     Through my employment as a Special Agent with the Drug Enforcement Administration (DEA), I have gained knowledge in the use of various investigative techniques, including the use of wire and electronic interceptions and other types of electronic surveillance, physical surveillance, undercover investigators, confidential informants, cooperating witnesses, controlled purchases of illegal drugs, consensually-monitored recordings, investigative interviews, trash searches, mail covers, financial investigations, administrative and grand jury subpoenas, and search and arrest warrants.

4.     The information contained in this affidavit is known personally by me and/or was learned by me from other officers or agents, witness interviews or by reviewing reports and documents. Since this affidavit is being submitted for the limited

purpose of enabling a judicial determination of whether probable cause exists to justify

the issuance of a search warrant for the described premises, I have not included each and

every fact known to me and others regarding the investigation of this matter. I have set

forth only the facts that I believe are necessary to establish probable cause. I base my

belief that financial and documentary evidence related to the transportation, sale and/or

distribution of illegal controlled substances will be recovered based on the information

contained within this affidavit.

5.      Based on my background, training and experience, as previously detailed in

this affidavit, I know:

a.      Drug traffickers often place assets in names other than their own to avoid
detection of these assets by law enforcement. In addition, drug traffickers often use a
variety of vehicles, vehicles in the names of others and rental vehicles to prevent
detection and identification by law enforcement and to prevent forfeiture of the vehicles;

b.      Even though these assets are in the names of other people, the drug
traffickers continue to use these assets and exercise dominion and control over them;

c.      Drug traffickers must maintain a large amount of U.S. currency in order to
finance their ongoing drug activities;

d.      Drug traffickers maintain books, computer data and programs, records,
receipts, notes, ledgers, airline tickets, money orders, cashier's checks, records of wire
transfers, records of purchase of vehicles and property and other papers relating to the
importation, ordering, sale, transportation, possession, purchase and transfer of controlled
substances;

e.      Drug traffickers often keep records that are usually recorded in units of
weight and monetary value, associated with pounds and kilograms or other such units of
measurement and dollar amounts to assist them in their business, records to keep track of
amounts "fronted" to customers and money owed by customers for amounts "fronted" by
the trafficker; the aforementioned records, books, notes, ledgers, etc., are maintained

where drug traffickers have ready access to them, i.e., on their persons, in their vehicles, in or about their residences and places of business. These documents are often kept in code to secret their meaning from law enforcement;

f.     It is common for drug traffickers to hide contraband, proceeds of drug sales, financial instruments, precious metals, jewelry and other items of value, and/or proceeds of drug transactions, records and evidence of drug transactions relating to transferring, hiding or spending large sums of money made from engaging in drug trafficking in secure locations on their persons, within their vehicles, within or around their residences and businesses for ready access or to conceal them from law enforcement authorities;

g.     When drug traffickers collect proceeds from the sale of drugs, they attempt to legitimize these profits. To accomplish these goals, drug traffickers utilize some, if not all, of the following means; foreign and domestic banks and their attendant services, securities, cashier's checks, money orders, bank drafts, letters of credit, real estate, shell corporations and business frauds;

h.     Drug traffickers commonly maintain names, addresses and telephone numbers in books or papers for their associates in the trafficking organization. These books or papers include such items as address books, telephone messages, etc. Shorthand and/or code names are sometimes used for buyers, co-conspirators, sellers, weights and other details of the drug traffickers;

i.     Drug traffickers hide and maintain in their residences, storage buildings, barns and outbuildings, places of business, family member's residences and the residences of co-conspirators, financial records which, when analyzed, will show their accumulation and expenditure of money and assets substantially exceeds any legitimate income. I am aware that the courts have recognized that unexplained wealth is derived from crimes motivated by greed, in particular, drug trafficking;

j.     The aforementioned books, records, receipts, notes, ledgers and other items mentioned above, are commonly maintained where the drug traffickers have ready access to them and are maintained for long periods of time after the actual event reflected in the documents;

k.     Drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their products. These traffickers usually maintain these photographs in their possession, as in their cellular telephones, iPads, or other portable electronic devices;

4

l.      Drug traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing drugs.  This paraphernalia includes, but is not limited to, scales, plastic bags, cutting agents, and other devices used for packaging to aid in the concealment of the drug for its distribution;

m.      Drug traffickers often keep hand guns, ammunition and other weapons in their residences (including outbuildings), businesses and automobiles to safeguard supplies of drugs and the proceeds of drug sales;

n.      Drug traffickers often operate under assumed names in order to conceal their true identities from law enforcement and, in so doing, acquire property, services and personal identification (such as driver's licenses and birth certificates) under their assumed or alias names, and they maintain such documents in evidence of their false identities in their residences (including outbuildings), businesses and automobiles together with evidence of their true identities;

o.      Drug traffickers commonly conduct a significant amount of their business by using cellular telephones and other telephone systems and normally make frequent calls to conduct, direct, supervise and coordinate their activities;

p.      Drug traffickers commonly keep their stash of controlled substances and currency proceeds separate and store the same in multiple residences (including outbuildings), businesses and automobiles; and

q.      Individuals involved in illegal activities like drug trafficking often generate large amounts of cash from their illegal activities. In order to conceal profits from illegal activities, these individuals employ various types of financial transactions to disguise and conceal profits.  Individuals involved in criminal activities may utilize the facade of a legal enterprise that can be represented as the source of funds arising out of the criminal activity.  Individuals involved in illegal activity often physically conceal their funds in locations such as residences, safe deposit boxes, safes or other locations where assets can be physically concealed. Illegal proceeds or assets may also be hidden by placing the assets in third party names including personal property, real property or financial institutions.

6.      Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers, I know that

computer data can be stored on a variety of systems and storage devices including, but not limited to, hard disk drives, floppy disks, thumb drives, compact disks, magnetic tapes, memory chips, cellular telephones, iPads and other portable electronic devices. I also know that during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

     a.     Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application or operating system that is being searched.

     b.     Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

     c.     The aforementioned facts most commonly necessitate the seizure of computers, cellular telephones, iPads and other portable electronic devices and all related computer equipment in order to conduct a search by Forensic Examiners in the well-equipped and controlled environment of a laboratory setting.

     8.     This affidavit is made in support of an Application for Search Warrant and Search Warrant for the premises described in Attachments "A", "B", "C", "D", "E", "F", "G" and "H".

7.      As a result of my participation in the investigation of matters referred to in this affidavit, and based upon reports made to me by other law enforcement agencies and witnesses, I am familiar with the facts and circumstances of this investigation.   The property to be searched is described in Attachments "A", "B", "C", "D", "E", "F", "G" and "H". Attachment "I" is a list of items for which authority is sought to search and seize. Since this affidavit is presented to support an application for a search warrant of the premises described on Attachments "A", "B", "C", "D", "E", "F", "G" and "H", I have not included each and every fact I know concerning this investigation.   However, I have set forth the facts that I believe are essential to establish the necessary foundation and probable cause to support the Application for Search Warrant and Search Warrant for the properties to be searched described in Attachments "A", "B", "C", "D", "E", "F", "G" and "H".

## **BACKGROUND**

8.      The DEA, HSI, and the Tulsa Police Department Special Investigations Division (SID) are currently conducting a joint investigation targeting Stille Giovanni Gutierrez Vivanco (Giovanni), the suspected leader of a drug trafficking organization (DTO) that imports heroin from Mexico and distributes the heroin throughout the United States to include the Northern District of Oklahoma. During the course of this investigation, investigators have identified Giovanni as the Mexico-based source of the heroin for Tulsa, Oklahoma. Investigators have also identified Norman Fabian Huerta

Avalos (aka Fabian Gomez), Jose Garcia, Osiel Serafin Calderon, Edson Garcia-Velasquez (aka Jorge), and Sonia Hernandez as individuals working for Giovanni.

9.      On February 19, 2019, United States District Court Judge John E. Dowdell, Northern District of Oklahoma, signed an affidavit and order authorizing investigators to intercept wire and electronic communications over telephone number 918-282-4865 (Target Telephone #2). The interception of wire and electronic communications on Target Telephone #2 began on February 20, 2019.

10.     On March 20, 2019, United States District Court Judge John E. Dowdell, Northern District of Oklahoma, signed an affidavit and order authorizing investigators to intercept wire and electronic communications over telephone number 918-954-0501 (Target Telephone #3). The interception of wire and electronic communications on Target Telephone #3 began on March 22, 2019.

11.     On April 18, 2019, United States District Court Judge John E. Dowdell, Northern District of Oklahoma, signed an affidavit and order authorizing investigators to continue the interception of wire and electronic communications over Target Telephone #3.

## PROBABLE CAUSE IN SUPPORT OF SEARCH WARRANT

12.     During the course of the Title III interceptions, agents with the DEA, HSI, and members of the Tulsa Police Department (TPD) SID were able to intercept calls involving money laundering and drug distribution for the DTO. The drug distribution and

8

money laundering involves Stille Giovanni Gutierrez Vivanco, Norman Fabian Huerta Avalos (aka Fabian Gomez), Jose Garcia, Edson Garcia-Velasquez (aka Jorge), Osiel Serafin Calderon, Fernando Buentello, Devin Hartzell, Jordan Smith, Alphonso Caldwell, Lukas Widener, Rudolph Gorniak, Sonia Hernandez and others not yet identified. Investigators have learned that Jose Garcia and Edson Garcia-Velasquez (aka Jorge) are utilizing 1817 West 45th Street, Tulsa, Oklahoma, 1334 North Joplin Avenue, Tulsa, Oklahoma, 6242 East Marshall Place, Tulsa, Oklahoma, 5238 East 15th Street, Unit #168, Tulsa, Oklahoma, and an apartment located at 8001 South Mingo Road, Apartment 1502, Tulsa, Oklahoma to store quantities of heroin and currency derived from the distribution of heroin. Investigators were able to document money laundering, drug distribution and make the following arrests and seizures involving this DTO:

a.      On February 25, 2019, members of the DEA Tulsa Resident Office (TRO) and the Tulsa Police Department (TPD) conducted surveillance on Jose Garcia in relation to a T-III investigation. Investigators intercepted communications between Garcia and Devin Hartzell, during which Hartzell ordered multi-ounces of heroin. Subsequently, surveillance was established on Garcia while he was at 1334 North Joplin Avenue, Tulsa, Oklahoma. Investigators followed Garcia from the residence at 1334 North Joplin Avenue, directly to Hartzell's residence, located at 530 West Denny, Catoosa, Oklahoma. Upon arrival, investigators observed Garcia meet with Hartzell, before departing a short time later. Surveillance was maintained on Hartzell's residence

and investigators observed a black BMW sedan bearing Oklahoma tag FOH644 depart from Hartzell's residence. Investigators followed the black BMW sedan to Tulsa, Oklahoma, where a traffic stop was conducted on the vehicle in the area of 5200 South Harvard Avenue by members of the TPD. During the traffic stop, officers identified Preston Wilson as the driver and sole occupant of the black BMW sedan. Additionally, officers identified Wilson to have outstanding felony warrants. Wilson was arrested on the felony warrants and a search of Wilson and his vehicle resulted in the seizure of heroin approximately three ounces of heroin inside Wilson's vehicle and on his person. During a post Miranda interview, Wilson stated that he had just purchased the three ounces of heroin from Hartzell at Hartzell's residence.

b.     On March 3, 2019, members of the DEA TRO and the TPD conducted surveillance on Alphonso Caldwell at his residence located at 5710 South Rockford Avenue, Tulsa, Oklahoma. Investigators began the surveillance on Caldwell's residence after Jose Garcia was observed coming and going from the residence. Investigators observed Caldwell depart from his residence driving a black Ford Escape bearing Oklahoma tag ERT897. Investigators followed Caldwell to the Avondale Apartments, located 6760 South Trenton Avenue, Tulsa, Oklahoma. Investigators observed Caldwell meet with the driver of a silver GMC Sierra bearing Oklahoma tag JIK862 in the parking lot. The meeting lasted approximately one minute. Investigators then observed the GMC Sierra depart from the area. Investigators maintained surveillance

10

on the GMC Sierra and coordinated for a marked TPD unit to execute a traffic stop on the vehicle. The GMC Sierra was stopped at approximately 200 West 71st Street, Tulsa, Oklahoma. During the traffic stop, the driver was identified as Wyatt Carnes-Mock. Additionally, officers seized approximately a gram of heroin and a Glock 17 9mm handgun from Carnes-Mock. During a post Miranda interview, Carnes-Mock stated that he had just purchased the heroin from Caldwell.

        c.     During this investigation, agents received information that a white male named Rudolph Gorniak was distributing heroin in the Tulsa, Oklahoma, area and his heroin source of supply was Alphonso Caldwell. On March 4, 2019, members of the DEA TRO and the TPD conducted surveillance on Rudolph Gorniak and observed him driving a black Cadillac Escalade bearing Oklahoma tag IMT106 in the area of 8100 South Memorial Drive, Tulsa, Oklahoma. While investigators were performing surveillance on Gorniak, a TPD patrol unit stopped Gorniak in the area of 6700 East 81st Street, Tulsa, Oklahoma, for a traffic violation. TPD officers made contact with the driver and sole occupant of the vehicle and the driver provided them a name of Alfonso Caldwell. During the traffic stop, the driver, later identified as Rudolph Gorniak, drove away from officers and eventually stopped his vehicle and ran on foot in the area of the Regency Park Apartments, located at 5477 East 71st Street, Tulsa, Oklahoma. Gorniak was eventually caught and arrested. After Gorniak was arrested, investigators observed Gorniak to be laying on top of a black and silver lock box. Additionally, investigators

observed that the lock box was partially open and observed numerous empty clear zip top baggies in and around the box. In the lock box, investigators recovered numerous baggies containing heroin and a green baggie with methamphetamine inside. Additionally, investigators recovered digital scales covered in heroin residue and $2,439.29 U.S. Currency. After Gorniak was arrested he was interviewed by investigators. During the interview, Gorniak stated that the black Cadillac Escalade that he was driving was owned by Caldwell. Gorniak explained that he purchases heroin from Devin Hartzell and Caldwell. Gorniak continued to explain that he also sells heroin to customers on behalf of Hartzell and Caldwell. Moreover, Gorniak stated that Hartzell and Caldwlel sell him an ounce of heroin in exchange for $1,600. Gorniak said that he purchases two ounces of heroin a day from either Hartzell or Caldwell and has been purchasing these quantities for approximately two to three months.

        d.     On March 5, 2019, surveillance was conducted in Tulsa, Oklahoma, on Jose Garcia in relation to this investigation. At approximately 10:00 a.m., Garcia was located at 1817 West 45th Street, Tulsa Oklahoma. At approximately 10:44 a.m., Garcia left that location and drove to his apartment located at 8001 South Mingo Road, Apartment 1502, Tulsa, Oklahoma. At approximately 12:28 p.m., Garcia left his apartment and drove to 1334 North Joplin Avenue, Tulsa, Oklahoma. These locations have been identified as "stash houses" where agents believe quantities of heroin and currency derived from the distribution of heroin are being stored. Garcia was then

followed from 1334 North Joplin Avenue to Alphonso Caldwell's residence, located at 5710 South Rockford Avenue, Tulsa, Oklahoma. Garcia was eventually followed back to 1334 North Joplin Avenue.

e.      At approximately 2:09 p.m., Garcia was followed from 1334 North Joplin Avenue to the McDonalds at 41st Street South and Garnett Road where he met with Jordan Smith. The meeting between Garcia and Smith lasted approximately one minute.

f.      Conducting surveillance on March 5, 2019, made it obvious to investigators that Garcia had quantities of heroin that he sold to Alphonso Caldwell and Jordan Smith after frequenting 1817 West 45th Street, 8001 South Mingo Road, Apartment 1502, and 1334 North Joplin Avenue in Tulsa, Oklahoma.

g.      On March 18, 2019, investigators received information from a confidential source (CS) that Norman Fabian Huerta Avalos (aka Gomez) was departing Tulsa, Oklahoma, on March 19, 2019, and returning to Mexico. The CS told investigators that Giovanni instructed Gomez to leave Tulsa and that Jose Garcia would take over the responsibilities that Gomez previously performed within the drug trafficking activities in Tulsa, Oklahoma. The CS told investigators that a young Hispanic male named Edson Garcia-Velasquez (aka Jorge) arrived in Tulsa, Oklahoma, to take over the activities that Garcia previously performed for the DTO. On March 19, 2019, investigators conducted

surveillance on Gomez and Garcia. Investigators watched Garcia drop Gomez off at a Zavala bus in a parking lot at 2100 South Garnett Road, Tulsa, Oklahoma. Gomez was seen getting on the Zavala bus with luggage.

h.      On March 21, 2019, at approximately 11:15 a.m., members of the DEA TRO and the TPD began conducting surveillance on Edson Garcia-Velasquez (aka Jorge) while he was at 1334 North Joplin Avenue, Tulsa, Oklahoma. At approximately 11:36 a.m., Garcia-Velasquez was followed to Alphonso Caldwell's residence located at 5710 South Rockford Avenue, Tulsa, Oklahoma. Approximately 15 minutes later, Garcia-Velasquez left Caldwell's residence.

i.      On that same date, investigators observed Garcia-Velasquez depart from 1334 North Joplin Avenue, Tulsa Oklahoma. Investigators followed Garcia-Velasquez directly to Walmart, located at 3116 South Garnett Road, Tulsa, Oklahoma. Investigators observed Garcia-Velasquez and an unknown white male driving a gray Nissan Sentra bearing Oklahoma tag EDV326 depart from the parking lot at the same time. Investigators followed the gran Nissan Sentra and coordinated for a traffic stop to be executed on the gray Nissan Sentra. At approximately 5:30 p.m., a TPD patrol unit executed a traffic stop on the gray Nissan Sentra in the area of East Pine Street and North Vandalia Avenue in Tulsa, Oklahoma. During the traffic stop, officers identified the driver and sole occupant of the vehicle as Joshua Pittman. Additionally, officers learned that Pittman had a suspended driver's license and a confirmed Tulsa County misdemeanor

warrant. While conducting a pat down of Pittman, officers observed a small white tied off trash bag containing heroin fall from Pitman's right pant leg. During a post Miranda interview, Pittman stated that he was in possession of four grams of heroin that he had just purchased from a Mexican at 3100 South Garnett Road, Tulsa, Oklahoma. Pittman said he paid $400 for the four grams of heroin.

        j.     On March 22, 2019, members of the DEA TRO conducted surveillance on Jose Garcia. While conducting surveillance on Garcia, investigators intercepted communications over Garcia's Title III, on Target Telephone #3, between Giovanni and Garcia coordinating for Garcia to meet an unknown male, later identified as Osiel Serafin Calderon, in the Tulsa, Oklahoma, area. Investigators observed Garcia meet with Calderon at QuikTrip, located at 3304 West 42nd Place, Tulsa, Oklahoma. After Garcia met with Calderon, a call was intercepted between Garcia and Giovanni. During this call, Garcia advised Giovanni that he met with Calderon and that he was going to the "daycare." Giovanni told Garcia to be careful, to make sure he puts "that" away really well, and to make sure he is not being followed. Garcia was then followed to 8001 South Mingo Road, Apartment 1502, Tulsa, Oklahoma. While at his apartment, investigators intercepted another call between Garcia and Giovanni. During this call, Garcia advised Giovanni that he received three "paletas." Garcia clarified that he received two "long ones" and one "small one." Giovanni directed Garcia to put them away and to open the small one first. Garcia then told Giovanni that he has more "tools" at the house and that

he was headed to the "daycare" to put the three that he just received away. Investigators noticed that Garcia then departed from his residence located at 8001 South Mingo Road, Apartment 1502. Investigators then intercepted a call between Garcia and Norman Fabian Huerta Avalos (aka Fabian Gomez). During this call, Garcia asked Gomez what he should do next. Gomez advised Garcia that he should take them to the "daycare." Garcia agreed and stated that he would take them to the daycare on "15th." Garcia then called Raul Ramirez Bejarano, using telephone number 52-311-144-2409. During this call, Garcia asked Bejarano if he rented the "daycare" located on 15th. Bejarano affirmed and gave Garcia directions to A-AAA Key Mini Storage, located at 5238 East 15th Street, Tulsa, Oklahoma. Garcia advised Bejarano that he was dropping off, but the gate wouldn't open. Garcia explained that he was entering code "16822507*" into the key pad. Investigators confirmed that Garcia was at A-AAA Key Mini Storage located at 5238 East 15th Street during this conversation. After Garcia left the A-AAA Key Mini Storage, Garcia called Giovanni. During this call, Garcia advised Giovanni that he had dropped "the kids" off at the "daycare."

k. On March 25, 2019, members of the DEA TRO and the TPD conducted surveillance on Devin Hartzell's residence, located at 530 West Denny, Catoosa, Oklahoma. While conducting surveillance on Hartzell, investigators observed a red Ford F-150 bearing Oklahoma tag HQR733 depart from Hartzell's residence. Investigators maintained surveillance on the red Ford F-150 and coordinated a traffic stop

16

on the vehicle in the area of 11300 East I-44 westbound in Tulsa, Oklahoma. During the traffic stop, Sean Wasson was identified as the driver and sole occupant of the vehicle. During the traffic stop, officers observed a torn plastic baggie in plain view with heroin residue in the baggie and several small brown pieces of heroin littered across the center console, seats, and floorboards. Wasson was transported to the Tulsa County jail where he was read his Miranda warning and interviewed. During the interview, Wasson stated that he had dumped his heroin out in the truck when he got pulled over. Wasson stated that he dumped a half ounce of heroin in his truck. Wasson identified Hartzell as his heroin supplier and stated that he purchases heroin from Hartzell three to four days a week. Wasson advised he travels to Hartzell's residence in order to purchase heroin from Hartzell.

l.      Also on March 25, 2019, members of the DEA TRO and the TPD conducted surveillance on Edson Garcia-Velasquez (aka Jorge). During surveillance, investigators followed Garcia-Velasquez to Walgreens, located at 6040 South Yale Avenue, Tulsa, Oklahoma. At Walgreens, investigators observed Lukas Widener meet with Garcia-Velasquez. After the meeting, Widener entered into the driver's seat of a gold 4-door Buick sedan bearing Oklahoma tag DBN030 and Garcia-Velasquez departed from the parking lot. Investigators maintained surveillance on Widener and observed him depart from the Walgreens parking lot.

m.      Investigators coordinated for TPD officers to execute a traffic stop on Widener in the area of 5100 South Yale Avenue in Tulsa, Oklahoma. During the traffic stop, officers identified Widener to be the driver of the gold Buick sedan and Johnathan Rosso as the passenger in the vehicle. Additionally, officers located approximately a half-ounce of heroin underneath the carpet on the driver's side of the vehicle.

n.      Investigators responded to the scene of the traffic stop in order to interview Widener. During the interview, Widener stated that he had purchased the heroin at Walgreens at 61st and Yale in Tulsa, Oklahoma, from a member of a Mexican drug trafficking organization. Widner explained that he had originally purchased an ounce of heroin from an individual driving a gray Ford Fiesta. Widener stated that after purchasing from the Mexican supplier that he met with two customers in the parking lot and sold them heroin. Widener continued to explain that he sold approximately a half ounce of heroin to his customers and estimated that he had approximately a half ounce of heroin left in his vehicle.

o.      On March 27, 2019, members of the DEA TRO and the TPD conducted surveillance on Edson Garcia-Velasquez (aka Jorge). During surveillance, at approximately 5:27 p.m., investigators followed Garcia-Velasquez to Devin Hartzell's residence, located at 530 West Denny, Catoosa, Oklahoma. A few minutes after arriving, Garcia-Velasquez departed from Hartzell's residence. At the same time, investigators

18

observed a red Toyota Yaris bearing Oklahoma CYZ001 depart from Hartzell's residence. Investigators followed the red Toyota Yaris and coordinated for TPD patrol unit to execute a traffic stop on the vehicle.

       p.     At approximately 5:54 p.m., in the area of 9200 East 61st Street, Tulsa, Oklahoma, TPD officers executed a traffic stop on the red Toyota Yaris for a traffic violation. During the traffic stop, officers identified Marquis Adams as the driver and sole occupant of the vehicle. Additionally, officers identified Adams to have a suspended driver license. During a search of the vehicle, officers located and seized approximately four grams of heroin. During a post Miranda interview, Adams stated that the heroin that was seized from his vehicle was purchased from Hartzell. Additionally, Adams stated that he travelled to Hartzell's residence in Catoosa, Oklahoma, in order to purchase the heroin from Hartzell.

       q.    On March 28, 2019, members of the DEA TRO and the TPD conducted surveillance on Edson Garcia-Velasquez (aka Jorge). Investigators observed Garcia-Velasquez depart from 1334 North Joplin Avenue, Tulsa, Oklahoma. Investigators followed Garcia-Velasquez to the area of 91st and Memorial in Tulsa, Oklahoma, and observed Garcia-Velasquez meet with Devin Hartzell. In the same area, investigators then observed Hartzell meet with Brent Moore. Moore was observed driving a gray Acura bearing Oklahoma tag GRD862. Investigators maintained surveillance on Moore and coordinated a traffic stop on Moore in the area of Admiral and Memorial in

Tulsa, Oklahoma. During the traffic stop, officers seized approximately one ounce of heroin from Moore's person. Additionally, during a post Miranda interview, Moore stated that he purchased the ounce of heroin from Hartzell.

r.      On April 1, 2019, investigators intercepted a series of text messages, over Target Telephone #3, between Jose Garcia and Sonia Hernandez. During the text messages, Garcia advised Hernandez that he had three wire transfers to make and asked if Hernandez wanted him (Garcia) to take them to her work. Hernandez and Garcia ultimately coordinated for Garcia to deliver the drug proceeds for the wire transfers at 12:00 p.m. at Hernandez' work. During this investigation, investigators have identified Hernandez to work at Angelica's Check Cashing Plus, located at 2017 South 129th East Avenue, Suite B, Tulsa, Oklahoma. Meanwhile, investigators established physical surveillance on Garcia at 6242 East Marshall Place, Tulsa, Oklahoma.

s.      At approximately 2:32 p.m., Garcia received a text message from Hernandez asking if he was still coming to her work. Garcia stated that he was and that he was waiting to receive the names and explained that there would be four wire transfers. Additionally, Garcia advised Hernandez that he would arrive in approximately 25 minutes. Garcia then asked Hernandez if he should go directly to Hernandez' window.

t.      At approximately 2:50 p.m., investigators observed Garcia depart from the residence at 6242 East Marshall Place, Tulsa, Oklahoma. Investigators followed Garcia directly to Angelica's Check Cashing Plus, located at 2017 South 129th East

Avenue, Suite B, Tulsa, Oklahoma. Upon arrival, Garcia entered inside the store in order to meet with Hernandez.

u.     On April 2, 2019, a call was intercepted between Jose Garcia and Norman Fabian Huerta Avalos (aka Fabian Gomez). During the call, Garcia advised Gomez that he told Edson Garcia-Velasquez (aka Jorge) that he would meet him the next morning at his residence so he could give Garcia-Velasquez "food." During this investigation, agents have identified that this DTO uses the term "food" as a code word for heroin.

v.     The following day, at approximately 8:46 a.m., investigators conducted surveillance on Garcia-Velasquez and observed him travel from 1334 North Joplin Avenue, Tulsa, Oklahoma, to 6242 East Marshall Place, Tulsa Oklahoma. Investigators observed Garcia's vehicle to also be located at 6242 East Marshall Place, Tulsa, Oklahoma. At approximately 9:13 a.m., Garcia-Velasquez left 6242 East Marshall Place, Tulsa Oklahoma, and returned to his residence at 1334 North Joplin Avenue, Tulsa, Oklahoma. At approximately 9:24 a.m., a call was intercepted between Garcia and Garcia-Velasquez. During this call, Garcia asked Garcia-Velasquez how much he delivered to him. Garcia-Velasquez told Garcia "24,000." Garcia told Garcia-Velasquez that he is $300 short.

w.     Based on the April 2nd call between Garcia and Gomez, where Garcia told Gomez that he would meet Garcia-Velasquez the next morning at his

residence in order to give Garcia-Velasquez "food;" and the sequence of events that was observed on April 3rd followed by the call between Garcia and Garcia-Velasquez. Investigators know that Garcia and Garcia-Velasquez are storing heroin and currency derived from the distribution of heroin at both 1334 North Joplin Avenue and 6242 E. Marshall Place.

x.      On April 4, 2019, a call was intercepted between Jose Garcia and Edson Garcia-Velasquez (aka Jorge). During this call Garcia-Velasquez told Garcia that he was at the house on the "west" and asked Garcia for directions to 51st and Harvard in Tulsa, Oklahoma. Garcia-Velasquez also advised Garcia that he was going to meet "Paisa" in order to deliver him a "can." During this investigation, investigators have identified "Paisa" as David Diaz, a heroin customer of the DTO. Additionally, investigators have identified this DTO to use the word "can" as a code word for a quantity of heroin. Investigators confirmed that a vehicle Garcia-Velasquez drives was at the residence located at 1817 West 45th Street, Tulsa, Oklahoma. Investigators followed Garcia-Velasquez' vehicle as it left the residence at 1817 West 45th Street and travelled directly to Chili's, located at 3302 East 51st Street in Tulsa, Oklahoma.

y.      At approximately 3:23 p.m., investigators observed a white 2-door Toyota Solara bearing Oklahoma tag GQW205 arrive and park in the area of Garcia-Velasquez. Investigators then observed Diaz exit the driver's seat of the white 2-door Toyota Solara and enter into the passenger seat of Garcia-Velasquez' vehicle. After

approximately one minute, investigators observed Diaz exit Garcia-Velasquez' vehicle and enter back into the driver's seat of his white 2-door Toyota Solara. Diaz and Garcia-Velasquez then both departed from the parking lot.

      z.     On April 15, 2019, a CS advised investigators that he/she would be receiving $32,000 U.S. Currency from Jose Garcia, at approximately 2:00 p.m., at the Woodland Hills Mall in Tulsa, Oklahoma. Additionally, the CS stated that Giovanni had requested for him/her to deliver the $32,000 to an unknown individual, later identified as Fernando Buentello that would arrive in Tulsa, Oklahoma, later in the afternoon.

      aa.    At approximately 2:00 p.m., surveillance indicted that Garcia's silver Acura SUV was located at 6242 East Marshall Place, Tulsa, Oklahoma. Approximately five minutes later, surveillance indicted that Garcia had departed from the residence at 6242 East Marshall Place, Tulsa, Oklahoma, driving his silver Acura SUV.

      bb.    At approximately 2:45 p.m., investigators observed Garcia arrive to the Woodland Hills Mall parking lot, located at 7021 South Memorial Drive, Tulsa, Oklahoma. Investigators observed the CS meet with Garcia in the Woodland Hills Mall parking lot in order to receive the $32,000 U.S. Currency from Garcia. After meeting with the CS, investigators observed Garcia depart from the Woodland Hills Mall parking lot.

cc.     Investigators then coordinated for the CS to deliver the $32,000 in drug proceeds to Buentello at Giovanni's direction. On that same date, at approximately 5:30 p.m., the CS met with Buentello in the area of 61st and Memorial in Tulsa, Oklahoma. Buentello counted the $32,000 before departing from the parking lot with the $32,000 concealed in a cereal box. Investigators maintained surveillance on Buentello and followed Buentello to Oklahoma City, Oklahoma. In Oklahoma City, Oklahoma, investigators coordinated for an Oklahoma Highway Patrol (OHP) Trooper to execute a traffic stop on Buentello. During the traffic stop, investigators seized the $32,000 in drug proceeds. Buentello signed a disclaimer stating that the $32,000 was not his.

dd.     On April 24, 2019, a call was intercepted between Jose Garcia and Edson Garcia-Velasquez (aka Jorge).  During the call, Garcia-Velasquez told Garcia how much heroin he had left. Garcia then told Garcia-Velasquez that he would see him early the next morning and the two would talk about Garcia-Velasquez bringing drug proceeds to Garcia when he comes to pick up more heroin.  Garcia told Garcia-Velasquez to meet him at the apartment. Garcia-Velasquez told Jose Garcia that he would be there at 9:00 am.

ee.     On April 25, 2019, surveillance was conducted on Garcia-Velasquez and agents observed that Garcia-Velasquez's Ford Fiesta bearing Oklahoma tag IWT846 left 1334 North Joplin Avenue, Tulsa, Oklahoma, at approximately 9:00 am and drove to 8001 South Mingo Road, Apartment #1502, Tulsa, Oklahoma.

24

## 1334 NORTH JOLPIN AVENUE, TULSA, OKLAHOMA

13.     During this investigation, surveillance has been conducted on Edson Garcia-Velasquez (aka Jorge) and he has been identified to permanently reside at the residence located at 1334 North Joplin Avenue, Tulsa, Oklahoma. As previously mentioned in this affidavit, investigators have seen Garcia-Velasquez leave 1334 North Joplin Avenue and distribute heroin to his customers on numerous occasions. Investigators have also verified through the use of a law enforcement database that Jose Garcia is the responsible party for paying the utilities at his residence, 1334 North Joplin Avenue, Tulsa, Oklahoma.

## 6242 EAST MARSHALL PLACE, TULSA, OKLAHOMA

14.     During this investigation, surveillance has been conducted on Jose Garcia and on Edson Garcia-Velasquez (aka Jorge). During surveillance, investigators have observed Garcia and Garcia-Velasquez coming and going from the residence located at 6242 East Marshall Place on numerous occasions. As previously mentioned in this affidavit, investigators have intercepted calls involving Garcia that verify this DTO is storing heroin and currency derived from the distribution of heroin within the residence. Agents have also verified through the use of a law enforcement database that Fabian Gomez is a responsible party for paying the utilities at 6242 East Marshall Place, Tulsa, Oklahoma.

## 8001 SOUTH MINGO ROAD, APARTMENT 1502, TULSA, OKLAHOMA

15.     During this investigation, surveillance has been conducted at 8001 South Mingo Road, Apartment 1502, Tulsa, Oklahoma. Investigators have identified apartment 1502 to be Jose Garcia's permanent residence where he sleeps every night. As previously mentioned in this affidavit, on March 22, 2019, Garcia met with Osiel Serafin Calderon and then went to the apartment located at 8001 South Mingo Road, Apartment 1502. Investigators were able to verify through intercepted calls that Garcia received a quantity of heroin from Calderon prior to travelling to 8001 South Mingo Road, Apartment #1502.

## 5238 EAST 15TH STREET, UNIT #168, TULSA, OKLAHOMA

16.     As previously stated in this investigation, on March 22, 2019, investigators observed Garcia deliver and store a quantity of heroin in the storage unit located at 5238 East 15th Street, Unit #168, Tulsa, Oklahoma, after he received a shipment of heroin from Osiel Serafin Calderon. Garcia then called Raul Ramirez Bejarano, using telephone number 52-311-144-2409. During an intercepted call, investigators identified Garcia to utilize code "16822507*" in order to access the storage unit. Investigators confirmed that Garcia was at A-AAA Key Mini Storage located at 5238 East 15th Street during this conversation. On April 4, 2019, investigators travelled to A-AAA Key Mini Storage, located at 5238 East 15th Street, Tulsa, Oklahoma, and served an administrative subpoena to A-AAA Key Mini Storage management. Investigators provided management the gate code of "16822507" and management identified this gate code to be linked to

26

unit #168. Management also identified the renter as a Raul Bejarano and a "contractor" as Jose Garcia.

## 530 WEST DENNY, CATOOSA, OKLAHOMA

17. During this investigation, agents have identified this residence to be the residence where Devin Hartzell permanently resides. Investigators have conducted surveillance on Edson Garcia-Velasquez (aka Jorge) and have observed Garcia-Velasquez travel to 530 West Denny in Catoosa, Oklahoma, on numerous occasions. As previously mentioned in this affidavit, investigators have followed customers from Hartzell's residence and have seized heroin from Hartzell's customers after they have left his residence. Investigators have also seized heroin from Hartzell's customers after they met with Hartzell in parking lots in Tulsa, Oklahoma.

## 5710 SOUTH ROCKFORD AVENUE, OKLAHOMA

18. During this investigation, investigators have identified this residence to be the residence where Alphonso Caldwell lives. Investigators have conducted surveillance on Jose Garcia and Edson Garcia-Velasquez (aka Jorge) and have identified them to deliver heroin to Caldwell at Caldwell's residence, located at 5710 South Rockford Avenue on numerous occasions. As previously mentioned in this affidavit, investigators have followed Caldwell from his residence and have seized heroin from Caldwell's customers. Investigators have also verified through the use of a law enforcement database

that Shalimar Caldwell, Alphonso Caldwell's wife, is a responsible party for paying the utilities at 5710 South Rockford Avenue, Tulsa, Oklahoma.

### 1817 WEST 45th STREET, TULSA, OKLAHOMA

19.     During this investigation, surveillance has been conducted on Jose Garcia and Edson Garcia-Velasquez (aka Jorge) and have observed them travel to the residence at 1817 West 45th Street in Tulsa, Oklahoma. As previously mentioned in this affidavit, investigators have followed Garcia-Velasquez from this residence and have watched him distribute heroin to his customers.

### 2017 S. 129th E. Avenue, Suite B, TULSA, OKLAHOMA

20.     During this investigation, surveillance has been conducted on Jose Garcia and investigators have observed Garcia deliver drug proceeds to Sonia Hernandez after he communicated with Hernandez about bringing drug proceeds to her so she could send the drug proceeds to Stille Giovanni Gutierrez Vivanco in Mexico. Additionally, investigators have identified Hernandez to work at Angelica's Check Cashing Plus, located at 2017 South 129th East Avenue, Suite B, Tulsa, Oklahoma.

21.     Based on the foregoing information regarding intercepted phone calls, drug seizures, surveillance and other information developed during the investigation, together with my training and experience that individuals involved with drug trafficking organizations keep records and other indicia of their involvement in money laundering and drug trafficking at their residences. I believe that items listed on Attachment "I" will

28

be found at Jose Garcia and Edson Garcia-Velasquez' residences located at 1334 North Joplin Avenue, 6242 East Marshall Place, 1817 West 45th Street, 8001 South Mingo Road, Apartment 1502, and in their storage unit located at 5238 East 15TH Street, Unit #168 in Tulsa, Oklahoma. I believe that items listed on Attachment "I" will be found at Sonia Hernandez's place of employment located at 2017 South 129th East Avenue, Suite B, Tulsa, Oklahoma, Devin Hartzell's residence located at 530 West Denny, Catoosa, Oklahoma, and in Alphonso Caldwell's residence located at 5710 South Rockford Avenue, Tulsa, Oklahoma. All locations are within the Northern District of Oklahoma.

WHEREFORE, based on the foregoing, I believe there is probable cause to search Jose Garcia and Edson Garcia-Velasquez' residences located at 1334 North Joplin Avenue, 6242 East Marshall Place, 1817 West 45th Street, 8001 South Mingo Road, Apartment 1502 and in their storage unit located at 5238 East 15TH Street, Unit #168 in Tulsa, Oklahoma. I believe there is probable cause to search Sonia Hernandez's place of employment located at 2017 South 129th East Avenue, Suite B, in Tulsa, Oklahoma. I believe there is probable cause to search Devin Hartzell's residence located at 530 West Denny, Catoosa, Oklahoma and Alphonso Caldwell's residence located at 5710 South Rockford Avenue, Tulsa, Oklahoma. These properties are described in Attachments "A", "B", "C", "D", "E", "F", "G" and "H". Items described on Attachment "I" are evidence of crimes, fruits or instrumentalities of crimes and property designed for use, intended for

29

use and used in committing crimes, relating to violations of Title 21, United States Code, Sections 846 and 841(a) and respectfully request that a search warrant be issued.

_____
SA Taylor Wilson
Drug Enforcement Administration

Sworn and subscribed to before me this _13th_ day of May, 2019.

_____
Frank H. McCarthy
United States Magistrate Judge

30

## ATTACHMENT "A"

### LOCATION TO BE SEARCHED

**1334 N. Joplin Avenue, Tulsa, Oklahoma and curtilage premises;** a single family residence located in the 1300 block of North Joplin Avenue. The residence is the fourth residence south of East Oklahoma Street on the west side of North Joplin Avenue. The numbers 1334 are not displayed on the residence. The first residence north of 1334 N. Joplin Avenue is 1338 N. Joplin Avenue and the first residence south of 1334 N. Joplin Avenue is 1330 North Joplin Avenue. The front door of the residence is white in color. The residence is constructed of tan siding, brown trim and a brown sloped roof.



## ATTACHMENT "B"

## LOCATION TO BE SEARCHED

**6242 East Marshall Place, Tulsa, Oklahoma, and curtilage premises**; a single family residence located in the 6200 block of east Marshall Place. The residence is the 9th residence east of North Maplewood Avenue on the south side of East Marshall Place. The numbers 6242 are located next to the white front door of the residence. The residence is constructed of green siding, white trim and a brown sloped roof.



## ATTACHMENT "C"

## LOCATION TO BE SEARCHED

**8001 S. Mingo Road, Apartment 1502, Tulsa, Oklahoma, and curtilage premises;** The residence to be searched is located in the Cascata apartment complex located at 8001 S. Mingo Road. The number "1502" is located on the building containing the apartment and on the brown front door of the apartment. The building containing the apartment is constructed of tan siding, brown trim and a brown sloped roof. The apartment is a 2 story apartment with the lower level comprised of a garage.



## ATTACHMENT "D"

## LOCATION TO BE SEARCHED

**5710 S. Rockford Avenue, Tulsa, Oklahoma, and curtilage premises**; a single family residence located in the 5700 block of South Rockford Avenue. The residence is the 4th residence north of east 58th Street on the west side of South Rockford Avenue. The numbers 5710 are located next to the tan front door of the residence. The residence is constructed of red brick, tan trim and a brown sloped roof.



## ATTACHMENT "E"

## LOCATION TO BE SEARCHED

**1817 West 45th Street, Tulsa, Oklahoma, and curtilage premises**; a single family residence located in the 1800 block of West 45th Street. The residence is the western portion of a duplex located on the Northeast corner of West 45th Street and South Waco Avenue. The numbers 1817 are displayed next to the brown front door. The residence is constructed of brown brick, tan siding and a brown sloped roof.



## ATTACHMENT "F"

## LOCATION TO BE SEARCHED

**530 West Denny, Catoosa, Oklahoma, and curtilage premises**; a single family residence located in the 500 block of West Denny.  The residence is the 2nd residence east of the dead end of the street and on the south side of West Denny.  The front door to the residence is black in color. The numbers 530 are located above the garage door.  The residence is constructed of red brick with tan and blue siding.



## ATTACHMENT "G"

## LOCATION TO BE SEARCHED

**5238 East 15th Street, Unit #168, Tulsa, Oklahoma**; Storage unit #168 located within the A-AAA Key Mini Storage facility. The Storage facility is located in the 5200 block of East 15th Street.



## ATTACHMENT "H"

## LOCATION TO BE SEARCHED

**2017 S. 129th E. Avenue, Suite B, Tulsa, Oklahoma**; the business is located in a business center located on the Northeast corner of East 21st Street and South 129th E. Avenue. Suite B is located on the southern portion of the building. The building is comprised of brown stucco, green trim and a flat roof.  The numbers 2017 and the letter B is located on the glass front door to the business.



### ATTACHMENT "I"

### DESCRIPTION OF ITEMS TO BE SEIZED

1.     Documents showing ownership of real or personal property;

2.     United States Currency or items reflecting drug proceeds;

3.     Books, records, receipts, notes and other papers relating to the trafficking of narcotics even though these documents may be in code or in a different language other than English or in electronically stored data.

4.     Contraband, including controlled substances, proceeds of drug sales, records of drug transactions, drug sources, drug customers, and other tangible items evidencing the obtaining, secreting, transfer and/or concealment of assets and/or money obtained through or used in the transportation, distribution, and sale of narcotics, including but not limited to drug or money ledgers, buyers lists, seller lists, recording of sales and any corresponding records of account receivable, money paid or received, drugs supplied or received, cash received to be paid for controlled substances or intended to be paid for controlled substances, whether in paper form or electronically stored data on computer discs, cellular telephones, or other storage media;

5.     Items of personal property tending to establish the existence of a narcotics conspiracy including but not limited to personal telephone bills, photographs and documents and other items reflecting names, addresses, telephone numbers, and communications;

6.     Paraphernalia for distributing, packaging and weighing narcotics. Equipment and materials used in the building or using concealed compartments;

1

7.     Articles of personal property tending to establish the ownership of the property in question, including telephone, rent receipts, keys, utility company receipts, papers, documents, letters and cancelled mail envelopes;

8.     Records of mail and communication services for cellular telephones and other communication devices which evidence the participation in a conspiracy to distribute narcotics;

9.     Records and items reflecting travel for the purpose of participation in drug trafficking including passports, airline tickets, vehicle rental receipts, credit card receipts, hotel and restaurant receipts, cancelled checks, maps and records of long distance calls reflecting domestic and foreign travel;

10.    Any and all appointment calendars;

11.    Bank statements, loan applications, money drafts, letters of credit, money orders, cashier's checks, bank checks, safety deposit box keys, vault keys, safes, any and all documents relating to banking activities and other financial transactions including the purchase of real estate and documents showing ownership of real estate;

12.    Records relating to employment, wages earned and paid and other compensation records.   Records relating to local, state and federal personal and business income, sales and service taxes, including but not limited to, computations, notes and records used for tax purposes;

13.    Evidence of proceeds including items relating to maintaining, secreting, gathering or liquidating drug proceeds, particularly:   financial records of withdrawals, funds of transfers, purchases, sales, transfers of assets or consolidation of assets.   Liquid

2

assets or evidence of them including currency, bank statements, money drafts, letters of credit, money orders, cashier's checks, pass books, precious metals and jewelry, and documents relating to safe deposit boxes, stocks, bonds and other financial instruments;

14.     Evidence of the expenditure of money for the purchase of vehicles or evidence establishing an ownership interest in vehicles, including certificates of title, vehicle tag records, photographs and receipts of vehicle transactions;

15.     Evidence contained within vehicles on the curtilage of the property to be searched;

TW 5-13-19 FHM

16.     ~~Cellular telephones including electronically stored data on said telephones or other electronic storage devices such as PDA's or electronic organizers;~~

17.     Cellular telephones;

18.     Electronic memory chips or storage chips or SIM cards used in cellular telephones and the data and information stored thereon.  Computers and data storage devices including discs, drives, CD's and DVD's and the electronically stored data thereon. The electronically kept information or data stored on electronic storage devices, computers or PDA's whether in files or disc, drives, in memory storage devices, in the drives or other electronic storage medium.  E-mail, text messages or other notes or records whether financial or otherwise, accessible by computer or other communication services stored in files on hard drives, drives, CD, DVD, in the drives, or other electronic storage medium or device;

19.     Firearms, ammunition and articles associated with the possession, ownership and use of firearms including, boxes, receipts, holsters, clips, and equipment.

3